## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANDERSON FEDERATION OF TEACHERS; AVON FEDERATION OF TEACHERS; MARTINSVILLE CLASSROOM TEACHERS ASSOCIATION; G. RANDALL HARRISON; SUZANNE LEBO and SHANNON ADAMS | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:21-cv-01767-SEB-DML |
| TODD ROKITA, in his official capacity as the Attorney General of the State of Indiana; KATIE JENNER, in her official capacity as the Secretary of Education of the State of Indiana; and, TAMMY MEYER, in her official capacity as the Chair of the Indiana Education Employment Relations Board. | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

### INTRODUCTION

Plaintiffs seek a preliminary injunction to enjoin the Defendants from enforcing Indiana's 2021 Senate Enrolled Act 251, which amends Indiana Code §20-29-5-6 ("SEA 251"). Plaintiffs, however, cannot demonstrate a likelihood of success on the merits and do not satisfy the remaining factors necessary to justify the issuance of a preliminary injunction; therefore, the Court should deny their demand for a preliminary injunction.

The Court can anticipate a motion to dismiss both Katie Jenner, in her official capacity as the Secretary of Education of the State of Indiana, and Tammy Meyer, in her official capacity as the Chair of the Indiana Education Employment Relations Board ("IEERB") as Defendants, as neither IEERB, nor the Department of Education have a role in enforcing SEA 251. The Department of Education and IEERB's sole obligation under SEA 251 is to provide feedback to the Attorney General on the dues withholding form. Ind. Code § 20-29-5-6(d). The Department of Education and IEERB provided such feedback to the Attorney General and have no further obligation under SEA 251. Additionally, IEERB was legislatively created to act as a neutral party between labor and the State, and it would be improper for it to be a party to this action. (See generally Ind. Code §§ 20-29-3-4 and 20-29-3-6).

## STANDARD OF REVIEW

"[A]n applicant for preliminary relief bears a significant burden." *Ill. Republican Party v. Pritzker*, No. 20-2175, 2020 WL 5246656, at *2 (7th Cir. Sept. 3, 2020). Such relief "is an extraordinary and drastic remedy" and "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129–130 (2d ed.1995)) (emphasis added in *Mazurek*).

Because a preliminary injunction is a drastic remedy, a preliminary injunction cannot be granted unless the party seeking the injunction satisfies four "threshold burden[s]": (1) that it has a reasonable likelihood of success on the merits; (2) that it lacks an adequate remedy at law; (3) that it will suffer irreparable harm if the

preliminary injunction is not awarded; and (4) that an injunction would not harm the public interest. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006); *see also Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). With respect to the reasonable likelihood of success, "[i]t is not enough that the chance of success on the merits be 'better than negligible.'" *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Sofinet v. INS*, 188 F.3d 513, 514 (7th Cir. 1999)); *see also Ill. Republican Party*, 2020 WL 5246656 at *2. Rather, the party seeking the injunction must make a "strong showing" of likely success on the merits. *Id.* And requiring a strong showing on the merits is especially important where the requested preliminary injunction would prevent state officials from enforcing state laws, for "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *New Motor Vehicle Bd. Of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977).

## ARGUMENT

SEA 251 amends the current law regarding withholding of teachers' pay to ensure that teachers, in considering their commercial withholdings of payments, understand their protected rights. Indeed, Plaintiffs generally ignore a broad premise that these teachers are employees of a political subdivision of the State of Indiana. SEA 251 provides guidance to the language of a state form for withholding pay of an employee of a political subdivision, namely a school corporation. The State can require written consent to such withholding of any pay from an employee, or those seeking a benefit from the State. *See Cole v. Richardson*, 405 U.S. 676, (1972) (holding that statute requiring public employees to take oath defending the Constitution does

not violate the U.S. Constitution). Additionally, Plaintiffs are not entitled as of right to have certain portions of their pay withheld through an automatic mechanism; it is a benefit provided by the State. Indeed, the United States Supreme Court has already determined that there is no right to withholding, and disallowing withholding does not curtail association or speech. *Ysura v. Pocatello Educ. Ass'n*, 555 U.S. 353, 355 (2009). Likewise, the Seventh Circuit Court of Appeals has held that the government does not violate a union's right to associate by creating restrictions on payroll deductions. *Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 645–46 (7th Cir. 2013). That is, courts have already rejected Plaintiffs' arguments.

Plaintiffs seek a preliminary injunction to enjoin the Defendants from enforcing SEA 251. Notably, the Plaintiffs neither specify which sections of SEA 251 should be enjoined from enforcement, nor do Plaintiffs narrow their argument to specific provisions of SEA 251. Instead, Plaintiffs broadly request that this Court enjoin Defendants from enforcing any provision of SEA 251. Plaintiffs make three broad arguments, which Defendants restate as: 1) whether SEA 251 violates the "Contract Clause," 2) whether SEA 251 is "compelled speech," and if it is, whether it violates the First Amendment; and 3) whether SEA 251 curtails the First Amendment's right of freedom of association.

## I.    Plaintiffs Have Failed to Show a Reasonable Likelihood of Success on the Merits.

### A.  SEA 251 Does Not Violate the Contract Clause

The Supreme Court has not invoked the Contract Clause to invalidate a state law in forty years.[1] The Contract Clause restricts the power of States to disrupt contractual arrangements, providing, "[n]o state shall ... pass any ... Law impairing the Obligation of Contracts." U.S. Const., Art. I, § 10, cl. 1. The Contract Clause applies to any kind of contract. See *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 244–245, n. 16, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978). However, not all laws affecting pre-existing contracts violate the Contract Clause. See *El Paso v. Simmons,* 379 U.S. 497, 506–507, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965).

To determine when a law violates the Constitution, the Supreme Court has long applied a two-step test. First, whether the state law has "operated as a substantial impairment of a contractual relationship." *Allied Structural Steel Co.,* 438 U.S., at 244, 98 S.Ct. 2716. In answering that question, the Court has considered the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights. *See id.* at 246; *El Paso,* 379 U.S., at 514–515; *Texaco, Inc. v. Short,* 454 U.S. 516, 531 (1982). Second, the Court has considered whether the state law is drawn in an "appropriate" and "reasonable" way to advance "a significant and legitimate public purpose." *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 411–412 (1983).

The Supreme Court recently used this test and determined that a Minnesota state law did not violate the Contract Clause. *Sveen v. Melin*, 138 S. Ct. 1815, 1821–

---

[1] For a general discussion, see Ely, James W., *Still in Exile? The Current Status of the Contract Clause* (January 18, 2019). Vanderbilt Law Research Paper No. 19-04,available at SSRN: https://ssrn.com/abstract=3318590

22 (2018). In *Sveen,* a Minnesota statute provided that, upon the dissolution of a marriage, the designation of a (former) spouse in a life insurance policy was automatically revoked. The law was enacted after Sveen purchased a life insurance policy and named his then-wife as the beneficiary. *Id.* After their divorce in 2007, Sveen took no action to alter his beneficiary designation. *Id.* at 1817. Sveen passed away in 2011, and his ex-wife and children made claims against Sveen's life insurance policy. *Id.* While Sveen's children argued that their father's divorce canceled Sveen's ex-wife's beneficiary designation, Sveen's ex-wife claimed that, as the law did not exist when the policy was purchased, and she was named as the primary beneficiary, applying the later-enacted law to the policy violates the Constitution's Contract Clause. *Id.*

The Eighth Circuit of Appeals found that the retroactive application of the law to Sveen's policy violated the Contract Clause. *Metropolitan Life Insurance Company v. Melin*, 853 F.3d 410 (8th Cir. 2017). The Supreme Court overturned the decision, and rejected the Contract Clause claim, in an 8-1 decision.  The Court held even though "the law makes a significant change," the revocation statute did not "substantially impair" the pre-existing contract. *Sveen v. Melin*, 138 S. Ct. at 1822 (2018). In part, the Court held the statute does not impair the existing contract because "a policyholder can reverse the effect of the Minnesota statute with the stroke of a pen. The law puts in place a presumption about what an insured wants after divorcing. But if the presumption is wrong, the insured may overthrow it. And he may do so by the simple act of sending a change-of-beneficiary form to his insurer." *Sveen,* at 1823. "The statute thus reduces to a paperwork requirement (and a fairly

painless one, at that): File a form and the statutory default rule gives way to the original beneficiary designation." *Id.*

The Court in *Sveen* noted that in cases going back to the 1800s, the Supreme Court has held that laws imposing such minimal paperwork burdens do not violate the Contract Clause. *Sveen* at 1823 (2018). Recording statutes do not violate the Contract Clause. *Id.; see also Jackson v. Lamphire,* 3 Pet. 280, 7 L.Ed. 679 (1830); *Vance v. Vance,* 108 U.S. 514 (1883); *Texaco, Inc. v. Short,* 454 U.S. 516 (1982). Such filing requirements are "minimal". *Id.* The Court has also long upheld laws mandating other kinds of notifications or filings against Contract Clause attacks. In *Curtis v. Whitney,* 13 Wall. 68, 20 L.Ed. 513 (1872), for example, the Court approved a statute retroactively affecting buyers of "certificates" for land offered at tax sales. The law required the buyer to notify the tax-delinquent property owner, who could then put up the funds necessary to prevent the land's final sale. If the buyer failed to give the notice, he could not take the land—and if he provided the notice, his chance of gaining the land declined. Still, the Court made short work of the Contract Clause claim, finding not "every statute which affects the value of a contract," the Court stated, "impair[s] its obligation." Because the law's notice rule was "easy [to] compl[y] with," it did not raise a constitutional problem. *Curtis,* at 70-71, as cited by *Sveen* at 1824. *Sveen* also noted *Gilfillan v. Union Canal Co. of Pa.,* 109 U.S. 401 (1883), where the Supreme Court sustained a state law providing that an existing bondholder's failure to reject a settlement proposal in writing would count as consent to the deal. "If [the bondholder did] not wish to abandon his old rights and

accept the new," the Court explained, "all he ha[d] to do [was] to say so in writing." *Gilfillan,* at 406, *cited by Sveen* at 1825.

In analyzing SEA 251 under the Supreme Court's two-part test, this Court must first determine whether the state law has "operated as a substantial impairment of a contractual relationship." *Allied Structural Steel Co.,* 438 U.S. at 244. In other words, this Court should ask if SEA 251 undermines the contractual bargain, interferes with a party's reasonable expectations, or prevents the party from safeguarding or reinstating his rights. *Id.* SEA 251 does not impair a union's contractual relationship with its teacher members. It does not limit whether a union can contract with a teacher in any way. It merely is a paperwork requirement (also, a painless one), similar to the long line of Supreme Court cases noted above that did not violate the Contract Clause. SEA 251 provides no greater obligation than that of "record the deed," "notify the landowner," or "send in a form to your insurance company." *Sveen v. Melin*, 138 S. Ct. 1815 (2018). Indeed, the withholding agreement is always terminable at will and can be re-executed with the same parties at will. *See* Ind. Code 22-2-6-2; *see also* [ECF 3, Pla. Memo at 2].

This Court need not even address the second part of the test, as there is no substantial impairment in executing a new agreement each year, including after June 30, 2021, as it is merely paperwork, a recording of written consent. However, Plaintiffs also cannot show that SEA 251 violates the second part of the test, because requiring updated signatures and withholding agreements each year is a "reasonable" way to advance "a significant and legitimate public purpose." *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 411–412 (1983). The

legitimate public purpose is clear, assuring that public employees provide written consent that they want a portion of their pay withheld, and upholding individual liberties that teachers cannot be discriminated against employment if they do not join a union. *Sweeney v. Pence*, 767 F.3d 654 (7th Cir. 2014).

It is codified in Indiana law that, "citizens of Indiana have a fundamental interest in the development of harmonious and cooperative relationships between school corporations and their certificated employees." Ind. Code § 20-29-1-1-1. Additionally, "[t]he state has a basic obligation to protect the public by attempting to prevent any material interference with the normal public school educational process." Ind. Code § 20-29-1-1-3. Underlying SEA 251 is the State's legitimate government interest in ensuring that public school teachers' withholding agreements do not violate their individual liberties. This Court need not even address whether the State has a legitimate interest in protecting the rights of individual teachers, as this Court previously acknowledged that interest as legitimate in its analysis of Indiana's "Right to Work" statute. *Sweeney v. Pence*, 767 F.3d 654 (7th Cir. 2014).

The Seventh Circuit held in *Sweeney v. Pence* that, "there exists a ***plausible public policy reason*** for enacting the Right to Work statute based on economic theories which the legislators may have believed to be true …" *Sweeney v. Pence*, 767 F.3d 654 (7th Cir. 2014) (emphasis added.) While the Court dismissed the Contract Clause claim in *Sweeney* on other grounds, the Court's discussion of the government's "plausible public policy" in determining a rational basis under the Equal Protection Clause, is similar to the test applied in Contract Clause cases where there must be a "legitimate public purpose" if the law substantially impairs a contract. *Energy*

*Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 411–412 (1983). Again, *Sweeny* found a plausible public policy related to unions and economic theories, including that all have a right to join or not join a union. *Sweeney v. Pence*, 767 F.3d 654 (7th Cir. 2014). This Court should similarly find that the government has a legitimate public purpose for enacting SEA 251 – ensuring that public school teachers provide written consent each year to withhold part of their pay for union dues, assures that such public employees understand that they have a right to choose whether or not to join an union without risk to their employment.

Additionally, as discussed in more detail below, the Seventh Circuit Court of Appeals has found that the State clearly has an interest in public employee unions and payroll deductions. *Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 657 (7th Cir. 2013) citing *Ysursa,* 555 U.S. at 359, 129 S.Ct. 1093 (noting that "the State is not constitutionally obligated to provide payroll deductions at all"). The Seventh Circuit noted that the State's concern related to the payroll deductions and differential treatment among government employees is "supported by its concern for labor peace among the public safety employees." *Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 657 (7th Cir. 2013). Caselaw makes clear that the State has a legitimate interest and a rational basis for SEA 251.

The only argument that Plaintiffs present to support their assertion that SEA 251 violates the Contract Clause is that somehow SEA 251 prohibits them from collecting the remaining annual dues of the 2020/2021 school year after July 1, 2021[2].

---

[2] Indiana Code defines a "school year" as July 1st of each year through June 30th of the following year. See Ind. Code §20-18-2-17.

[ECF 3, Pla. Memo at 8.] However, even if the Court finds that SEA 251 somehow prevents further withholding from teachers' pay of the 2020/2021 school year until the teacher executes a new agreement, SEA 251 does not preclude Plaintiffs from collecting dues or fees outside of a withholding agreement, which is discussed in detail below. Additionally, as demonstrated in the long line of cases cited, a recording requirement is merely a "paper requirement," which the Supreme Court has routinely held is not a significant change that would constitute a Contract Clause violation. *Sveen* at 1822. For these reasons, Plaintiffs' Contract Clause argument fails.

**B. SEA 251 Is Not Compelled Speech**

Plaintiffs also argue that the State is seeking to disfavor a particular speaker or viewpoint by forcing teachers to adopt an "anti-union" message in authorizing payroll deductions for union membership fees, but Plaintiffs have not met their burden to show that they are reasonably likely to succeed on the merits with their argument that SEA 251 is unconstitutional compelled speech. [ECF 3, Pla. Memo at p. 20.]

Under First Amendment jurisprudence, speech constitutes unconstitutional compelled speech when a state requires an individual to express a political or ideological message with which the individual disagrees. *See*, *e.g.*, *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943) (invalidating requirement that students say the pledge of allegiance or face expulsion); *Miami Herald Publg. Co. v. Tornillo*, 418 U.S. 241 (1974) (invalidating law requiring newspapers to print responses from candidates they had criticized); *Wooley v. Maynard*, 430 U.S. 705

(1977) (invalidating requirement that motorists broadcast the message "Live Free or Die" on their licenses plates or else face a continuing threat on the motorist's ability to perform ordinary daily tasks). These cases involve compelled speech that the state forced the individual to express in a public forum with no practical alternative to adopting the forced speech.

SEA 251, however, does not force an individual to participate in speech because it only applies if the teacher elects to pay union dues through paycheck withholding. Plaintiffs provide a declaration explaining that teachers active in supporting unions are almost certainly likely to object to signing the acknowledgment. But Plaintiffs have not put forth evidence or argument that teachers are forced to use paycheck deductions as the only method by which teachers may pay their union dues. For example, Plaintiffs' unions are part of the Indiana Federation of Teachers, and as such, to become a member at large, the teacher may fill out a form, or enclose a check or money order.[3] Similarly, a membership application form uploaded to the Indiana State Teachers Association ("ITSA") website[4] provided for not only payroll deductions as a payment option for national, state and local dues, but also provided options for bank account withdrawals, credit card payments, and check payments. Additionally, the most recent step-by-step guide on ISTA's website on how to join the national, state, and local union as a certified teacher or other member explains that members are given the option to pay the annual membership by check, credit card, or electronic

---

[3] http://in.aft.org/sites/default/files/article_pdf_files/2020-08/membership-at-large_2020.2021_final.pdf
[4] https://www.ista-in.org/uploads/Membership-Form.pdf

funds transfer.[5] If a teacher felt strongly that signing an acknowledgment of rights conveyed an anti-union message (it does not), it appears that he or she could opt into paying annual union dues via another method. Because Plaintiffs have not shown that the challenged law forces teachers to sign the acknowledgment of their rights in order to pay union dues with no alternatives, this is not compelled speech.

Additionally, these withholding disclosures are similar to any other required disclosure for many commercial enterprises. The Supreme Court has held repeatedly that the government can compel the disclosure of certain information in commercial or professional settings. Specifically, the Supreme Court has found that, "an advertiser's rights are reasonably protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers. . . . The right of a commercial speaker not to divulge accurate information regarding his services is not . . . a fundamental right." *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651, 652 n.14 (1985). *See also Milavetz, Gallop, & Milavetz v. United States*, 559 U.S. ___, No. 08-1119 (2010), slip op. at 19–23 (requiring advertisement for certain debt relief businesses to disclose that the services offered include bankruptcy assistance). Plaintiffs do not argue that the language required to be included on the form is untruthful or misleading. Individuals do, in fact, have a First Amendment right *not* to associate in a union and have a right *not* to be discriminated against for electing not to associate with a union, and Plaintiffs do not purport to

---

[5] https://www.ista-in.org/uploads/Join-Now-Instructions-2020-21.pdf at 3.

disagree with this explanation of rights. U.S.C. Const. Amend. 1; *see also Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298 (2012).

Plaintiffs cite *Nat'l Institute of Family & Life Advocates v. Becerra,* 585 U.S. __ ; 138 S. Ct. 2361, 2371 (2018), which held that the Government's stated interest in informing low-income women of their rights, was not met by the statute as drafted. *Id.* The State has already been found to have a legitimate government interest in right to work, union dues, and withholding agreements. *Sweeney v. Pence*, 767 F.3d 654 (7th Cir. 2014), and Plaintiffs have not shown that SEA 251 does not meet that government interest. Further, the Plaintiffs wholly ignore the fact that the teachers are employees of a political subdivision of the State, and the State has the authority to draft the withholding agreement to highlight the benefits and rights of its teachers. The Supreme Court has also held that the principle of *Barnette* does not extend so far as to bar a government from demanding an oath, either from its employees or of persons seeking professional licensing or other benefits. *See Cole v. Richardson*, 405 U.S. 676 (1972) (holding that statute requiring public employees to take oath was constitutional); *see also Connell v. Higginbotham*, 403 U.S. 207 (1971) (finding oath to uphold constitution valid); *Knight v. Board of Regents*, 269 F. Supp. 339 (S.D.N.Y. 1967) (three-judge court), *aff'd*, 390 U.S. 36 (1968) (statute requiring teachers to execute an oath to support Federal and State Constitutions, and to observe professional standards of competence and dedication, was valid, and state can reasonably ask teachers in public or tax exempted institutions to subscribe to such an oath); *Ohlson v. Phillips*, 304 F. Supp. 1152 (D. Colo. 1969), *aff'd,* 397 U.S. 317 (1970), (oath whereby teachers must swear to uphold the Constitution of the United

States and of the state, and to faithfully perform duties of their position was not unconstitutionally vague or overbroad, or otherwise constitutionally invalid). This line of cases show that an oath can be subscribed to federal or state employment; however, "the right to public employment is not nearly so fundamental" as say, the right to vote. *Fields v. Askew,* 279 So. 2d 822, 824 (Fla. 1973). However, the declaration of understanding the teachers' constitutional rights as a condition precedent for withholding of a portion of their pay for union dues is not the same as even making it conditional upon their employment. Indeed, as discussed below, the Seventh Circuit and the Supreme Court have said that a complete bar of withholding state employee pay for union dues is constitutional. *See Ysura v. Pocatello Educ. Ass'n*, 555 U.S. 353, 355 (2009); *see also Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 645–46 (7th Cir. 2013).

Additionally, the Supreme Court has upheld regulations of professional conduct that only incidentally burden speech. For example, in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, the Court considered a law requiring physicians to obtain informed consent before they could perform an abortion. 505 U.S. 833, 881 (1992) (plurality opinion). Specifically, the law at issue in *Casey* required doctors to tell their patients prior to an abortion about the nature of the procedure, the health risks involved, the age of the unborn child, and the availability of printed materials from the state about various forms of assistance. In a plurality opinion, the Court rejected a free-speech challenge to the informed consent requirement, viewing the law as part of the practice of medicine and an incidental regulation of speech. SEA

251 is no different than other informed consent laws. It merely mandates that the teacher must be informed of their rights, and then provide consent.

Because Plaintiffs have provided no authority that signing a statement explaining teachers' constitutional rights constitutes compelled speech, especially since Plaintiffs have provided no evidence that paycheck deductions are the only method by which they may collect their union dues, Plaintiffs have not shown a reasonable likelihood of success with this argument justifying the extraordinary relief of a preliminary injunction.

### C. SEA 251 Does Not Curtail Freedom of Association

Moreover, Plaintiffs are not likely to succeed on the merits of their claim that SEA 251 violates their First Amendment right to associate. As Plaintiffs argue, it has long been understood that "implicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). However, the Bill of Rights "enshrines negative liberties." *Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 645 (7th Cir. 2013). It "directs what government may not do to its citizens, rather than what it must do *for* them." *Id.* (emphasis added).

In *Ysura v. Pocatello Educ. Ass'n*, the United States Supreme Court addressed whether a law affecting the automatic deduction of union dues violated the union's right to associate under the First Amendment and determined that it did not. 555 U.S. 353, 355 (2009). In support of this decision, the Supreme Court noted that payroll

deductions use government personnel resources. *See id.* Accordingly, a government payroll deduction for a union is, essentially, a subsidy of that union. *See id.* The Supreme Court determined that, "[w]hile in some contexts the government must accommodate expression, it is not required to assist others in funding the expression of particular ideas." *Id.* at 358. The State's decision not to allow payroll deductions for certain union activities was "not an abridgement of the union's speech." *Id.* at 359. The unions were still "free to engage in such speech as they [saw] fit;" they were simply "barred from enlisting the State in support of that endeavor." *Id.*

Likewise, the Seventh Circuit Court of Appeals has held that the government does not violate a union's right to associate by creating restrictions on payroll deductions. *See Walker*, 705 F.3d at 646. In *Walker*, the Seventh Circuit noted that a prohibition on payroll deductions does not erect a barrier to a union's speech. *Id.* The obstacle to speech in that context is "the cost of speaking," which is an "obstacle the state itself has not created." *Id.* And, while the state may not "erect 'obstacles in the path of [the unions'] exercise of . . . freedom of speech, it need not remove those [obstacles] not of its own creation.'" *Id.* (quoting *Regan v. Taxation with Representation of Washington*, 461 U.S. 540, 549-50 (1983)).

Notably, these cases concerned restrictions on payroll deductions that went beyond the restrictions at issue here. SEA 251 has not eliminated payroll deductions. It has just created new requirements for them. As the Supreme Court has concluded that the State does not violate the First Amendment's right of association by completely eliminating payroll deductions for unions, the Plaintiffs' arguments that these lesser restrictions do violate the First Amendment clearly lack merit.

Nevertheless, Plaintiffs also seem to argue that SEA 251 violates their right to associate because it imposes burdens on teachers' unions that are not imposed on other unions. To the extent that Plaintiffs are attempting to raise an Equal Protection claim, this argument must fail because they have not pled such a claim. Furthermore, in *Wisconsin Educ. Ass'n Council v. Walker*, the Seventh Circuit addressed a similar argument and determined that the State did not violate the First Amendment by allowing one category of public employees, but not another category, the benefit of payroll dues deduction. *Walker*, 705 F.3d at 646.

Because the State has not violated Plaintiffs' First Amendment right to associate, it needs only demonstrate a rational basis for SEA 251. *See Yursa*, 555 U.S. at 359. For a rational basis to exist, the classification drawn by the statute must be rationally related to a legitimate state interest. *City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 432, 105 S. Ct. 3249, 3251, 87 L. Ed. 2d 313 (1985). And, as stated above in the discussion regarding the Contract Clause, the State does have a legitimate state interest for SEA 251, and the requirements under SEA 251 are rationally related to that legitimate state interest. Accordingly, Plaintiffs are not likely to succeed on the merits of their argument that SEA 251 violates the First Amendment.

## II.   There are Other Adequate Remedies.

Plaintiffs do not argue that there are no other adequate remedies at law, and instead merely argue that they need only show that the "balance of the equities tips in [their] favor." [ECF 3, Pla. Memo at p. 9 (*citing Higher Soc. of Ind. v. Tippecanoe*

*Cty.*, 858 F.3d 1113, 1116 (7th Cir. 2017)).] As noted above, the Plaintiffs have other adequate remedies at law. Plaintiffs can easily execute new withholding agreements, which merely require a signature and an email. According to Plaintiffs' Memo, at least two of the Plaintiff unions' agreements with their members do not have withholding of the first several paychecks, and therefore would not have to be executed immediately. [ECF 3, Pla. Memo at p. 5; *see also* the Avon CBA, "Deductions shall be made in twenty-one (21) equal installments, beginning with the sixth paycheck in the amount to be determined **each October** …" (Pla. Ex. 2A, Avon Collective Bargaining Agreement); *see also* Anderson's CBA ("the school employer shall, on written authorization of a school employee, deduct from each pay of such employee, starting with the **second pay**…") (Pla. Ex. 3A, the Anderson Collective Bargaining Agreement); *see also* Martinsville's CBA ("The Association shall certify the amount of the unified dues to the Corporation on or before August 1 of each school year. The School Corporation shall provide a list of the membership authorizations on file to the Association prior to October 1") (Pla. Ex. 1A, Martinsville's Collective Bargaining Agreement).] As noted by the Plaintiffs, each of the Unions' collective bargaining agreements "has an expiration date of June 30, 2021." [ECF 3, Pla. Memo at p. 6.] Even though the provisions of the collective bargaining agreement remain in place until a new agreement is executed, it is logical that withholding forms for future school years should be signed after July 1, 2021, the end of the recognized "school year." Therefore, the balance of equities tips in favor of the Defendants, and Plaintiffs cannot show they lack an adequate remedy in law.

III.    **Plaintiffs Have No Immediate Threatened Irreparable Harm and Waited Months After Law Went Into Effect, Prejudicing Defendants on their Demand for Expedited Briefing.**

An injunction is especially inappropriate here because Plaintiffs are responsible for the urgency they claim justifies the injunction. In seeking injunctive relief, a plaintiff cannot complain of an emergency of its own creation. This Court recently reiterated precisely this point in *Morgan v. White*, 964 F.3d 649, 651 (7th Cir. 2020), in rejecting a challenge claiming that Illinois signature-gathering rules were unconstitutional "given the social-distancing requirements adopted by the Governor of Illinois in light of the COVID-19 pandemic." In affirming the district court's denial of injunctive relief, this Court explained that "[o]ne important question, when a plaintiff seeks emergency relief, is whether the plaintiff has brought the emergency on himself." *Id.* at 652. The Court observed that the plaintiffs "did not evince any interest in the subject until early April 2020, several weeks after the Governor began to issue orders requiring social distancing," and concluded, "[t]hat's a good reason to conclude that they are not entitled to emergency relief." *Id.*

Further, Plaintiffs' argument that it would be hard to get signatures of its teachers in summer, is not compelling, and indeed, in no way can this Court take into consideration timing restraints for Plaintiffs. As this Court has said, "For better or worse, the political branches of government make policy judgments. The electorate can ultimately decide whether those judgments are sound, wise and constitute good governance, and then can express their opinions at the polls and by other means. But those are questions beyond the reach of the federal court, *which instead is limited to*

*analysis of particular legal arguments that the challenged legislation runs afoul of preemptive federal labor law or the U.S. Constitution." Sweeney v. Daniels*, No. 2:12CV81-PPS/PRC, 2013 WL 209047, at *13 (N.D. Ind. Jan. 17, 2013), *aff'd sub nom. Sweeney v. Pence*, 767 F.3d 654 (7th Cir. 2014) (emphasis added). This Court can only grant a preliminary injunction if it finds the legislation unconstitutional, not because it disagrees with the timing requirements, or the fact that teachers are on summer break when new withholding agreements must be signed. As to the timing, it runs parallel to the end of the state budget biennium and the expiration of the collective bargaining agreements that the unions and school corporations are parties to. The collective bargaining agreement of each of the Plaintiffs expires on June 30, 2021. [ECF 3, Pla. Memo at p. 6.]

Defendants contend that Plaintiffs' demand for expedited briefing and an immediate hearing seeking a preliminary injunction was unwarranted, and Defendants object to such a request. The Seventh Circuit has fully expressed the need and right of parties to engage in discovery before a preliminary injunction hearing: "The court readily acknowledges the need for all parties to engage in some limited discovery in case there remains a need for a hearing on preliminary injunction after this orders. In fact, the court will not hold such a hearing if the parties have not engaged in some preliminary discovery, as the court refuses to become the forum in which to do the discovery." *Share Corp. v. Momar, Inc.,* No. 10-CV-109, 2010 WL 724321, at *3 (E.D. Wis. Feb. 26, 2010). Such discovery is warranted here regarding Plaintiffs' alleged contracts with its members, standing, and whether the withholding agreements are even contracts, or merely procedural withholding mechanisms for

pay. It seems clear that these withholding agreements are merely a benefit for pay, and not a contract. Plaintiffs can enter into contracts with their union members separate and apart from any withholding agreement that their individual members have with their employer to deduct portions of their pay. Notably, the Plaintiffs need not use a withholding form to collect dues. The Plaintiffs can presumably collect their dues in another manner, as provided on the website of their state affiliate organization union website. As the Supreme Court noted, withholding agreements of union dues from the State is not a right, and the State not allowing for payroll deductions was in no way "an abridgement of the union's speech." *Ysura v. Pocatello Educ. Ass'n,*, 555 U.S. 353, 350 (2009).

## IV.   An Injunction Would Harm the Public Interest

It is long understood that harm to the opposing party and the public interest merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418 (2009). Even Plaintiffs note that the Court has determined that the government's interest is in large part presumed to be the public's interest. [*See* ECF 3 at p. 23 (citing *United States v. Rural Elec. Convenience Co-op. Co.,* 922 F.2d 429, 440 (7th Cir. 1991)).] Here, the government's already ascribed interest is the public's interest.

The likelihood of success on the merits affects the balance of the harms analysis. That is, the more likely a plaintiff will win on the merits, the less the balance of irreparable harm needs to favor the plaintiff's position. *Planned Parenthood*, 699 F.3d at 972; *see also Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc.,* 549 F.3d 1079, 1100 (7th Cir. 2008). In no way are Plaintiffs more

likely to win on the merits in this case, as noted in the briefing above. However, even if this Court were to conclude that Plaintiffs have demonstrated "some likelihood of success" on the merits in any portion of their claims, they would still not be entitled to a preliminary injunction. Anything short of an overwhelming likelihood of success is insufficient to justify preliminarily enjoining Indiana's significant interest in: certainty headed in to the new school year with students, teachers, school corporations, and others; the State's interest in labor peace, public employee union withholdings, and the State's interest in protecting and upholding individual liberties regarding freedom of speech and association by providing consent, with employees of a political subdivision of the State.

In contrast to the lack of harm to Plaintiffs, where Plaintiffs can execute new agreements, or provide alternative collections of dues, the harm of an injunction to the regulatory mission of the Defendants would be substantial. An injunction would prevent the Attorney General from his duty of protecting constitutional liberties.  An injunction would also bring uncertainty to non-parties, the school corporations, and all students and teachers ahead of the 2021/2022 school year. An injunction would undermine the Defendants' and the legislature's credibility and the public's confidence in their work, and would bypass and disrupt the ordinary functions of due process. The Court should be mindful that  in "cases where the public interest may be adversely affected courts are and, as pointed out in *Yakas*, should be much more reluctant to grant preliminary mandatory relief than if only private interests are involved." *Wells*, 429 N.E.2d at 684.

To the extent this Court concludes that a preliminary injunction is warranted, any relief should be "properly tailored" and accordingly limited. *C.Y. Wholesale*, 965 F.3d 541, 548–49. *See also Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 985 (7th Cir. 2012) ("The rule is that a federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it.") (quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 502 (1985)).

## CONCLUSION

Each of the Plaintiffs' arguments fail on the basis of Supreme Court guidance. First, the Supreme Court has found that new laws demanding execution of a new recording of old contracts does not violate the Contract Clause. *Sveen*, 138 S. Ct. 1815 (2018). Second, the law clearly favors Defendants on claims of compelled speech. The Supreme Court has found that the government can demand an oath to "uphold the Constitution", and to "faithfully perform duties", and to "subscribe to professional competence and dedication" *Ohlson,* 304 F. Supp. at 1154–55. The Supreme Court has found state laws can require explicit consent to perform an action. *Casey*, 505 U.S. 833, 881 (1992). The Supreme Court has found that "the right of a commercial speaker not to divulge accurate information regarding his services is not . . . a fundamental right." *Zauderer* 471 U.S. 626, 652 n.14 (1985). The Plaintiffs therefore cannot show that the written acknowledgment of the rights of government employees is compelled speech, nor can Plaintiffs show that SEA 251 conflicts with the First Amendment. Lastly, and perhaps most important, the Supreme Court has found that there is no right to withholding dues from government employees to labor unions, and

a complete bar disallowing withholdings does not abridge the individual or the union's speech, which is far more extreme than what SEA 251 requires. *Yursa*, 555 U.S. at 359. For the foregoing reasons, this Court should deny Plaintiffs' request for the extraordinary relief of a preliminary injunction.

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

Date: June 24, 2021          By:          */s/ Kelly S. Earls*
                                          Kelly S. Earls
                                          Attorney No. 29653-49
                                          Deputy Attorney General
                                          OFFICE OF INDIANA ATTORNEY GENERAL
                                          TODD ROKITA
                                          Indiana Government Center South, 5th Floor
                                          302 West Washington Street
                                          Indianapolis, Indiana 46204-2770
                                          Phone: (317) 234-4464
                                          Fax:   (317) 232-7979
                                          Email: kelly.earls@atg.in.gov