UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

|  |  |  |
|---|---|---|
| ANDERSON FEDERATION OF TEACHERS, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:21-cv-01767-SEB-KMB |
| TODD ROKITA, | ) ) | |
| Defendant. | ) ) | |

**ORDER ON PENDING MOTIONS**

This cause is now before the Court on the Motion for Summary Judgment and
Permanent Injunction [Dkt. 45] filed by all Plaintiffs: Anderson Federation of Teachers;
Avon Federation of Teachers; Martinsville Classroom Teachers Association; G. Randall
Harrison (a teacher and the President and dues-paying member of the Anderson
Federation of Teachers); Suzanne Lebo (a teacher and the President and dues-paying
member of the Avon Federation of Teachers); and Shannon Adams (a teacher and the
President and dues-paying member of the Martinsville Classroom Teachers Association)
(collectively, "Plaintiffs"); and on the Cross Motion for Summary Judgment [Dkt. 57]
filed by Defendant Todd Rokita, in his official capacity as the Attorney General of the
State of Indiana (the "State").[1]  In this lawsuit, Plaintiffs have challenged Senate Enrolled
Acts 251 and 297 ("SEA 251" and "SEA 297"), codified at Indiana Code

---

[1] Also currently pending on the docket is Plaintiffs' Motion for Oral Argument [Dkt. 46].
Because we have been able to rule on the parties' cross-motions for summary judgment based
solely on the briefing, we DENY Plaintiff's request for oral argument.

§ 20-29-5-6(c)–(d) (SEA 251) and § 20-29-5-6(c)–(e) (SEA 297), which require teachers and school corporations to comply with new and more onerous procedures to authorize the deduction of union dues from teachers' paychecks, on grounds that these statutory requirements violate teachers' First Amendment rights to freedom of association and free speech.

## **Factual Background**

### I.     **Introduction**

Plaintiffs consist of two categories of parties: the teacher Unions that represent school employees in Indiana and certain individual teachers represented by those teacher Unions.  Like other states, Indiana statutes regulate labor relations between public-sector school employers and employees.  Public-sector school employees have a right to "form, join, or assist school employee organizations" and to "participate in collective bargaining with school employers through representatives of their own choosing."  IND. CODE § 20-29-4-1.  Employees in the bargaining unit may select the unit's exclusive representative "to establish, maintain, or improve salaries, wages, salary, and wage related fringe benefits," as well as other matters specified by statute.[2]  IND. CODE §§ 20-29-5-1, 20-29-5-2, 20-29-4-1.

Here, the Unions are parties to collective bargaining agreements ("CBAs") with the school corporations that employ the teachers represented by the Unions.  Provisions

---

[2] The collective-bargaining process is distinct from a traditional contracting process because it is governed by statute and overseen by a neutral state agency, the Indiana Employment Education Relations Board.  *See* IND. CODE §§ 20-29-3-11(8), 20-29-6-6.1.

in these CBAs provide for a system whereby teachers can elect to have Union dues deducted from their paychecks by the school corporations and then transmitted to the teachers' unions.  For teachers who elect to pay their union dues using a payroll deduction,[3] the employee's authorization must comply with Indiana's wage-assignment laws.

## I.  Wage Assignments in Indiana

Dues deductions such as those at issue in this litigation are wage assignments generally governed by Indiana Code § 22-2-6-2.  That provision authorizes an assignment of wages if the assignment is (1) in writing; (2) signed by the employee personally; (3) by its terms revocable at any time by the employee upon written notice to the employer; (4) agreed to in writing by the employer; and (5) for the purpose of paying any of the eighteen (18) types of costs specified in the statute, including (as relevant here), "dues to become owing by the employee to a labor organization of which the employee is a member." *Id.*  Indiana law provides that "[a]ny direction given by an employee to an employer to make a deduction from the wages to be earned by said employee, after said direction is given, shall constitute an assignment of the wages of said employee." IND. CODE § 22-2-6-1(a).  "Employer" in this context "include[s] the state and any political subdivision of the state."  *Id.* § 22-2-6-1(b).

## II.  Indiana Teachers' Dues Authorization Agreements Prior to the Passage of SEA 251

---

[3] As discussed in more detail below, in addition to wage assignment through the employer's payroll system, teachers who decide to join a union are also permitted to pay their dues in other ways, including, *inter alia*, by check, money order, or electronic fund transfer.

In accordance with Indiana's wage assignment statutes, prior to the passage of SEA 251, the Indiana statutory provision governing Collective Bargaining for Teachers and dues deductions for teachers provided as follows:

> (a) the school employer shall, on receipt of the written authorization of a
>     school employee:
>     (1) deduct from the pay of the employee any dues designated or certified
>         by the appropriate officer of a school employee organization that is
>         an exclusive representative of any employees of the school
>         employer; and
>     (2) remit the dues described in subdivision (1) to the school employee
>         organization.
> (b) Deductions under this section must be consistent with:
>     (1) IC 22-2-6; [general wage assignment statute described above]
>     (2) IC 22-2-7; [assignment of wages to wage brokers] and
>     (3) IC 20-28-9-18 [assignment of wages for insurance or to annuity
>         accounts].

IND. CODE § 20-29-5-6(a)–(b).  For many years prior to the passage of SEA 251, the Plaintiff Unions, the teachers they represent, and the school corporations which employ those teachers, together made the arrangements for the payment of Union dues through payroll deduction pursuant to this legal framework.  The teachers signed agreements authorizing their School Employer to withhold amounts from their paychecks and to remit those amounts to their Unions to pay their dues; the School Corporations agreed to withhold the amounts and remit them to the Unions; and the Unions agreed to accept dues payments through this payroll deduction system.

Prior to the passage of SEA 251, the specific language set out in the authorization forms completed by Indiana teachers authorizing the deduction of their dues from their paychecks varied among school districts.  The following are examples of the wording in Plaintiffs' authorization forms:

4

> I hereby request the MSD of Martinsville to withhold dues for the Martinsville Classroom Teachers Association (MCTA) in substantially equal installments from my pay in accordance with the collective bargaining agreement.  The total of such deductions shall be the amount specified each year by the treasurer of the MCTA, and the proceeds from such deductions are to be forwarded promptly to that officer of the Association.  I also request that this written authorization remain in effect from year to year unless it is revoked in writing by me.

Pls.' Exh. 1B (Dues Authorization Form for <u>Martinsville</u> Classroom Teachers

Association).

> My signature below authorizes the Avon Community School Corporation to deduct dues from my payroll checks for the Avon Federation of Teachers in an amount of and according to a schedule agreed upon by the Avon Federation of Teachers.  Such dues shall then be forwarded to the treasurer of the Avon Local 3519.  My membership and dues will stay in effect until I notify the treasurer in writing otherwise.

Pls.' Exh. 2B (Dues Authorization Form for <u>Avon</u> Federation of Teachers Local 3519).

> This is to authorize the Anderson Community School Corporation to withhold from my pay the established dues to the Anderson Federation of Teachers.  <u>It is understood this authorization shall remain in force until notification is made to the school administration and the Anderson Federation of Teachers</u>.

Pls.' Exh. 3B (Dues Authorization Form for <u>Anderson</u> Federation of Teachers Local 519)

(emphasis in original).

The Unions and school corporations agreed to this payroll deduction system in

their CBAs.  The <u>Anderson</u> agreement, for example, provided in relevant part as follows:

> The school employer shall, on written authorization of a school employee, deduct from each pay of such employee, starting with the second pay, and each pay thereafter of such employee any dues designated or certified by the appropriate officer of the Union and shall remit such dues to the Union after each deduction.

Pls.' Exh. 3A (Anderson Collective Bargaining Agreement).

The <u>Avon</u> agreement provided in relevant part:

[The] Board agrees to deduct Union membership dues from the salaries of those teachers who have authorized such deductions.  Such authorization shall be provided by the Union and submitted to the Board on or before the fourth (4th) pay date of the school year.  Such authorization shall continue in effect from year to year unless revoked in writing by the teacher. Additional authorization will be accepted anytime with deductions beginning within four (4) weeks of the submission of the authorization.

\*\*\*

Deductions shall be made in twenty-one (21) equal installments, beginning with the sixth (6th) paycheck in the amount to be determined each October. Total remaining Union dues from non-returning teachers will be deducted accordingly from their last payroll check.  The proceeds from the deductions shall be forwarded by the Board of the Treasurer of the Union within five (5) school days after the checks from which the deduction were made are delivered to the teachers.

Pls.' Exh. 2A (Avon Collective Bargaining Agreement).

Finally, the <u>Martinsville</u> agreement provided in relevant part as follows:

Teachers who authorize dues deductions shall have dues deducted each year at the same rate unless the School Corporation receives written notification from the teacher to cease making such deductions not less than two weeks prior to the first pay of the new school year.  The Association shall certify the amount of the unified dues to the Corporation on or before August 1 of each school year.  The School Corporation shall provide a list of the membership authorizations on file to the Association prior to October 1.  The first deduction will be the first pay of the school year for all continuing members ….

Pls.' Exh. 1A (Martinsville Collective Bargaining Agreement).

## III.    SEA 251

During the 2021 legislative session, the Indiana General Assembly enacted SEA

251, which amended Indiana Code § 20-29-5-6 by adding the following provision:

(c) After June 30, 2021, the following apply to a deduction authorization by a school employee under subsection (a) or when a school employer

agrees with a school employee organization to deduct school organization dues from a school employee's pay:

(1) A school employee has the right to resign from, and end any financial obligation to, a school employee organization at any time. The right described in this subdivision may not be waived by the school employee.

(2) The authorization for withholding form shall include the school employee's full name, position, school employee organization, and signature and shall be submitted directly to the school employer by the school employee. After receiving the authorization for withholding form, the school employer shall confirm the authorization by sending an electronic mail message to the school employee at the school employee's school provided work electronic mail address and shall wait for confirmation of the authorization before starting any deduction. If the school employee does not possess a school provided work electronic mail address, the school employer may use other means it deems appropriate to confirm the authorization.

(3) An authorization for school employee organization dues to be deducted from school employee pay shall be on a form prescribed by the attorney general, in consultation with the board, and shall contain a statement in 14 point type boldface font reading: "I am aware that I have a First Amendment right, as recognized by the United States Supreme Court, to refrain from joining and paying dues to a union (school employee organization). I further realize that membership and payment of dues are voluntary and that I may not be discriminated against for my refusal to join or financially support a union. I authorize my employer to deduct union dues from my salary in the amounts specified in accordance with my union's bylaws. I understand that I may revoke this authorization at any time."

(4) Authorizations by a school employee for the withholding of school employee organization dues from the school employee's pay shall not exceed one (1) year in duration and shall be subject to annual renewal. Any authorization submitted by a school employee to the school employer before July 1, 2021, expires on July 1, 2021, and must be resubmitted in accordance with this subsection.

(5) Upon the submission of a written or electronic mail request to a school employer, a school employee shall have the right to cease the withholding of school employee organization dues from their pay. Upon receipt of a request, the school employer shall:

> (A) cease the withholding of school employee organization dues from the school employee's pay beginning on the first day of the employee's next pay period; and

> (B) provide written or electronic mail notification of the school employee's decision to the school employee organization.

> The notification in clause (B) must occur within a reasonable time to ensure that the school employee is not required to have dues withheld during the school employee's next pay period or any subsequent pay period.

(6) A school employer shall annually provide, at a time the school employer prescribes, written or electronic mail notification to its school employees of their right to cease payment of school employee organization dues and to withdraw from that organization. The notification must also include the following:

> (A) The authorization form described in subsection (c)(3).

> (B) The amount of dues that the school employee will be liable to pay to the school organization during the duration of the authorization, if the employee does not revoke the authorization before it expires.

(d)   On or before July 1, 2021, and not later than July 30 of each year thereafter, the attorney general, in consultation with the board and the department, must notify all school employers of the provisions described in subsection (c). This notice must include the authorization form described in subsection (c)(3).

IND. CODE § 20-29-5-6(c)–(d).

These provisions set forth in SEA 251 apply only to teachers and no other public employees in Indiana. Further, they apply only when a teacher authorizes a payroll

deduction to pay Union dues, not when they effectuate a wage assignment for any of the other seventeen costs enumerated in Indiana Code § 22-2-6-2.

## IV.   The Court's Preliminary Injunction

On June 15, 2021, Plaintiffs filed their original complaint in this action challenging the recently enacted SEA 251, and contemporaneously filed a motion for preliminary injunction.  At the time Plaintiffs initiated this litigation, their respective CBAs were set to expire at the end of Indiana's budget biennium fifteen days later, on June 30, 2021, the day before SEA 251 went into effect.  Some of the contractual obligations in the CBAs extended a few weeks beyond the expiration date into August 2021.  Plaintiffs sought preliminary injunctive relief on the grounds that SEA 251's new requirements for deductions of union dues from teachers' paychecks nullified the existing dues authorization agreements in violation of the Contract Clause.  Plaintiffs also alleged that SEA 251's requirements violated teachers' First Amendment freedom of speech rights by compelling them to speak the prescribed message on the dues-authorization form as well as their freedom of association rights by requiring them to annually renew their dues-deduction authorizations, while the other 17 types of wage assignments authorized under Indiana law have no such requirement.

On June 30, 2021, the Court granted Plaintiffs' motion for preliminary injunction as to the Contract Claus and free-speech claims but denied the motion with respect to Plaintiffs' freedom-of-association claim.  As a result, the Court preliminarily enjoined enforcement of sections (c) and (d) for dues authorizations incorporated in existing CBAs "until after the 26th pay period of the 2020–2021 school year" and enjoined section (c)(3)

"as to all new dues withholding authorization forms at issue in this litigation until further

order of the Court."  Dkt. 23.

### V.      SEA 297 – A New and Successive Statutory Enactment

Following the issuance of the Court's preliminary injunction of certain sections of

SEA 251, the Indiana General Assembly amended the statute through the enactment of

SEA 297, which became effective on July 1, 2022 and is codified at Indiana Code § 20-

29-5-6(c)–(e).  The relevant changes to the statute are noted below:

> (c) ~~After June 30, 2021,~~ **T**he following apply to a deduction authorization
> by a school employee under subsection (a) or when a school employer
> agrees with a school employee organization to deduct school
> organization dues from a school employee's pay:
>
> (1) A school employee has the right to resign from, and end any
> financial obligation to, a school employee organization at any time.
> The right described in this subdivision may not be waived by the
> school employee.
>
> (2) The authorization for withholding form shall include the school
> employee's full name, position, school employee organization, and
> signature and shall be submitted directly to the school employer by
> the school employee.  After receiving the authorization for
> withholding form, the school employer shall confirm the
> authorization by sending an electronic mail message to the school
> employee at the school employee's school provided work electronic
> mail address and shall wait for confirmation of the authorization
> before starting any deduction.  If the school employee does not
> possess a school provided work electronic mail address, the school
> employer may use other means it deems appropriate to confirm the
> authorization.
>
> (3) An authorization for school employee organization dues to be
> deducted from school employee pay shall be on a form prescribed by
> the attorney general, in consultation with the board, and shall contain
> a statement in 14 point type boldface font reading: "~~I am aware that I~~
> **The State of Indiana wishes to make you aware that you** have a
> First Amendment right, as recognized by the United States Supreme

10

Court, to refrain from joining and paying dues to a union (school employee organization).  ~~I further realize that~~ **Your** membership and payment of dues are voluntary and ~~that I~~ **you** may not be discriminated against for ~~my~~ **your** refusal to join or financially support a union.  ~~I~~ **By signing this form, you are agreeing to** authorize ~~my~~ **your** employer to deduct union dues from ~~my~~ **your** salary in the amounts specified in accordance with ~~my~~ **your** union's bylaws.  ~~I understand that I~~ **You** may revoke this authorization at any time."

(4) Authorizations by a school employee for the withholding of school employee organization dues from the school employee's pay shall not exceed one (1) year in duration and shall be subject to annual renewal.  ~~Any authorization submitted by a school employee to the school employer before July 1, 2021, expires on July 1, 2021, and must be resubmitted in accordance with this subsection~~.

(5) Upon the submission of a written or electronic mail request to a school employer, a school employee shall have the right to cease the withholding of school employee organization dues from their pay. Upon receipt of a request, the school employer shall:

> (A) cease the withholding of school employee organization dues from the school employee's pay beginning on the first day of the employee's next pay period; and

> (B) provide written or electronic mail notification of the school employee's decision to the school employee organization.

> The notification in clause (B) must occur within a reasonable time to ensure that the school employee is not required to have dues withheld during the school employee's next pay period or any subsequent pay period.

(6) A school employer shall annually provide, at a time the school employer prescribes, written or electronic mail notification to its school employees of their right to cease payment of school employee organization dues and to withdraw from that organization.  The notification must also include the following:

> (A) The authorization form described in subsection (c)(3).

11

> > > (B) The amount of dues that the school employee will be liable to pay to the school organization during the duration of the authorization, if the employee does not revoke the authorization before it expires.

> > (d) On or before July 1, 2021, and not later than July 30 of each year thereafter, the attorney general, in consultation with the board and the department, must notify all school employers of the provisions described in subsection (c).  This notice must include the authorization form described in subsection (c)(3).

> > **(e) Subsection (c)(3) does not apply to a collective bargaining or any other contract entered into or renewed before July 1, 2022. However, subsection (c)(3) applies to any collective bargaining agreement or contract entered into, renewed, modified, extended, or amended after June 30, 2022.**

IND. CODE § 20-29-5-6(c)–(e).

### VI.    Alternatives to Wage Assignment

In addition to a payroll deduction, teachers' unions in Indiana may collect and receive dues in several other ways: they may engage in their own regular billing practices to collect dues from members, which could be paid by check, money order, recurring bank payments, or other forms of payment.  For example, to become an at-large member of the American Federation of Teachers Indiana, a teacher may pay by check or money order.  *See* Dkt. 57-4.  Likewise, the Indiana State Teachers Association ("ISTA") permits bank account withdrawals, credit card payments, and check payments as options to remit national, state, and local dues, in addition to payroll deductions.  *See* Dkt. 57-3. Additionally, within the last year, the ISTA has begun offering a new program called Easy Pay as an alternative to payroll deductions for paying dues, which the ISTA describes as a "convenient method to pay Association dues, including local dues, through

automatic deductions from a checking or savings account, credit card, or personal/bank check." *Id.*

Plaintiffs acknowledge that these other due payment methods are available but prefer payroll deductions because they are an "efficient method" that is already established.  Am. Compl. ¶ 29.  Absent this method, teachers and their exclusive representatives are required to establish their own collection and accounting mechanisms, which Plaintiffs allege will impose additional costs, staffing requirements, and time, all of which constitute a burden on the exclusive representatives' ability to perform their functions and/or will require an increase in the amount of dues that members are charged. *Id.* ¶¶ 30–32.

## VIII.  The Instant Litigation

Plaintiffs amended their complaint on June 15, 2022, to address the new language for the authorization form as set out in SEA 297 and to remove their Contract Clause claim.  Plaintiffs continue to challenge the special dues deduction rules for teachers set forth in SEA 251, and have now filed for summary judgment and a permanent injunction barring enforcement of the dues deduction regime spelled out in SEA 251 and SEA 297 on grounds that it violates Plaintiffs' First Amendment free speech and association rights. The State likewise has moved for summary judgment in its favor.  The parties' cross-motions for summary judgment are now fully briefed and ripe for ruling.

## <u>Legal Analysis</u>

## I.   Summary Judgment Standard

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  We neither weigh the evidence nor evaluate the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant.  *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).  Because these are cross-motions for summary judgment and the same Rule 56 standards apply, our review of the record requires us to draw all inferences in favor of the party against whom a particular issue in the motion under consideration is asserted.  *See O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citing *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

## II.   Free Speech Claim

Plaintiffs first contend that because the challenged statutes compel their speech in violation of their First Amendment free speech rights, they are unconstitutional.  It is axiomatic that the First Amendment "guards the individual's right to speak his own mind…." *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 634 (1943); *see also Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018) ("The First Amendment . . . prohibits laws that abridge the freedom of speech."). Pursuant to this First Amendment protection, states cannot "compel [the individual] to utter what is

14

not in his mind." *Barnette*, 319 U.S. at 634; *accord Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 61 (2006) ("[F]reedom of speech prohibits the government from telling people what they must say.").

Government mandates which compel "individuals to speak a particular message" crafted by the State "alter the content of their speech" and are, consequently, considered content-based regulations. *Becerra*, 138 S. Ct. at 2371 (*quoting Riley v. Nat'l Fed. of Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988)). Such regulations "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* (citation and quotation marks omitted). Other types of government regulations of speech, such as certain regulations of commercial speech, are subject to a less-stringent standard of review and will be upheld so long as they are not "unjustified or unduly burdensome." *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985).

As discussed above, at the time we granted Plaintiffs' motion for preliminary injunctive relief on their compelled speech claim, SEA 251 provided that the State's new dues deduction authorization agreement was required to include verbatim the following language in bold face 14 point font (as shown here): **"I am aware that I have a First Amendment right, as recognized by the United States Supreme Court, to refrain from joining and paying dues to a union (school employee organization). I further realize that membership and payment of dues are voluntary and that I may not be discriminated against for my refusal to join**

**or financially support a union.  I authorize my employer to deduct union dues from my salary in the amounts specified in accordance with my union's bylaws.  I understand that I may revoke this authorization at any time."**

Applying the legal principles set forth above, we held that Plaintiffs were likely to succeed in showing that this requirement unconstitutionally compelled Plaintiffs to speak a prescribed message mandated by the State in violation of their free speech rights. Specifically, we held that, whether analyzed as a content-based regulation of speech subject to strict scrutiny or commercial speech subject to a more deferential standard of review, Plaintiffs were likely to be able to show that SEA 251 could satisfy neither standard because the State had demonstrated no non-hypothetical justification that this provision of SEA 251 plausibly furthered.  The sole justification put forward by the State was to "assur[e] that [] public employees understand that they have a right to choose whether or not to join a union without risk to their employment," (Dkt. 16 at 10), but the State pointed to no evidence suggesting that teachers do not already know that they possess these rights.  Moreover, even assuming that teachers were/are unaware of their rights, we found that Plaintiffs were likely to succeed in showing that SEA 251's required language was "wildly underinclusive" to fulfill the State's stated purpose because the prescriptive message did not inform teachers that they also have a right *to join* a union without risk to their employment.  On these grounds, we preliminarily enjoined the State from enforcing section (c)(3) of SEA 251 until further order of the Court.

As noted previously, following the issuance of our preliminary injunction, the Indiana General Assembly passed SEA 297, which amends portions of SEA 251, including the content of the advisement required to be included on teachers' dues deduction authorization agreements.  As relevant to Plaintiffs' free speech claim, SEA 297 requires the State's new dues deduction authorization agreement to include verbatim a new version of the prescribed statement in bold face 14 point font (as shown here):

**"The State of Indiana wishes to make you aware that you have a First Amendment right, as recognized by the United States Supreme Court, to refrain from joining and paying dues to a union (school employee organization). Your membership and payment of dues are voluntary and you may not be discriminated against for your refusal to join or financially support a union.  By signing this form, you are agreeing to authorize your employer to deduct union dues from your salary in the amounts specified in accordance with your union's bylaws.  You may revoke this authorization at any time."**

Plaintiffs argue that they are entitled to summary judgment on their compelled speech claim because, despite the "cosmetic differences" in the language required by SEA 251 and SEA 297, teachers who wish to utilize payroll dues deduction are still required under SEA 297 to sign a dues deduction authorization form affirming that they "have read the terms of the authorization form," which "terms" include a viewpoint-based message mandated by the government with which they do not wish to affiliate or endorse.

In this way, Plaintiffs argue, SEA 297, like SEA 251, compels them without justification to adopt a message that they do not wish to speak in violation of their First Amendment free speech rights.

The State, in response, contends that summary judgment in its favor on Plaintiff's First Amendment free speech claim is appropriate because SEA 297's amendments resolved any potential compelled speech issue the Court previously determined the Plaintiffs were likely to be successful in showing with regard to SEA 251.  Specifically, the State contends that the current version of the advisement required by SEA 297 constitutes government speech, which does not implicate the First Amendment, and a simple acknowledgment of receipt of that advisement does not compel teachers to endorse the government's message.  Thus, their free speech claim necessarily fails.

The government speech doctrine recognizes that, in addition to private speakers, "the government may also engage in speech and that the First Amendment does not regulate government speech as it does private speech." *Swart v. City of Chicago*, 440 F. Supp. 3d 926, 944 (N.D. Ill. 2020) (citing *Matal v. Tam*, 137 S. Ct. 1744, 1757 (2017); *accord Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 553 (2005) (the government's own speech "is exempt from First Amendment scrutiny")).  When the "government speaks, it is not barred by the Free Speech Clause from determining the content of what it says." *Walker v. Tex. Div., Sons of the Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015) (citation omitted).  "When the government wishes to state an opinion, to speak for the community, to formulate politics, or to implement programs, it naturally chooses what to say and what not to say." *Shurtleff v. Boston*, 142 S. Ct. 1583, 1589 (2022).

"The Constitution therefore relies first and foremost on the ballot box, not on rules against viewpoint discrimination, to check the government when it speaks." *Id.* Thus, "[g]overnment speech may adopt a particular viewpoint, so long as it does not coerce private speakers into espousing a certain view." *Amalgamated Transit Union Local 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 108 (3d Cir. 2022) (citing *Walker*, 576 U.S. at 207–08). Government speech is not, however, "exempt from First Amendment attack if it uses a means that restricts private expression in a way that 'abridges' the freedom of speech, as is the case with compelled speech." *Shurtleff*, 142 S. Ct. at 1599 (Alito, J., concurring).

One context in which courts apply the government speech doctrine is, unsurprisingly, "when the government itself speaks." *Swart*, 440 F. Supp. 3d at 944 (citations omitted). Here, the dues deduction authorization form is a state form, created by state officials. The challenged advisement language required by SEA 297 was drafted and adopted by the Indiana General Assembly and written from the state's perspective. Based on these factors, we have little trouble concluding that the advisement as currently crafted is government speech, and, as such, may adopt a particular viewpoint, so long as it does not compel private speakers to espouse, endorse, or affiliate with that view.[4]

---

[4] The parties devote much of their briefing to a discussion of the Supreme Court's decision in *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018), which the State cites as its justification for requiring the challenged advisement language in the teachers' dues deduction authorization form. Because we hold that SEA 297's advisement is government speech, rather than a regulation of private speech, we need not delve into the government's rationale for its viewpoint-based statement so long as Plaintiffs are not being compelled to speak or affiliate with that message. *See Pleasant Grove City v. Summum*, 555 U.S. 460, 467–68 (2009) (recognizing that the government can "say what it wishes" and "select the views that it wants to express") (citations and quotation marks omitted). However, the State's justification is relevant to

Thus, the only remaining issue for the Court to consider is whether SEA 297 unconstitutionally compels Plaintiffs to speak the government's message that they do not desire to adopt.

In *B.W.C. v. Williams*, 990 F.3d 614 (8th Cir. 2021), the Eighth Circuit Court of Appeals recently addressed a similar First Amendment free speech challenge to Missouri's form used to claim religious or other exemption from mandatory immunizations for public school students. Missouri's challenged form was split into two parts: first, a message from the Missouri Department of Health and Senior Services informing parents of the importance of immunizations, stating that unimmunized children are at higher risk for contracting and spreading vaccine-preventable diseases, and recommending that all children be immunized to prevent childhood diseases; and second, the parent's election of religious exemption, along with a checklist of the immunizations the child refused for religious reasons. *Id.* at 618. Among other claims, the plaintiffs—minor students and their parents who were seeking exemptions—argued that Missouri's vaccination exemption form unconstitutionally compelled their speech. *Id.*

In *B.W.C.*, the Eighth Circuit held that the parents' position that the exemption form "compels them to state the government's position does not match the structure or wording of the form." *Id.* at 620. The court reasoned that the statement merely outlined the government's position on immunizations and did "not require the plaintiffs to *affiliate*" with the immunization statement. *Id.* at 619. Additionally, because the

_____

Plaintiffs' freedom of association claim, requiring us to address this rationale in more detail below.

statement "direct[ed] its message to the parents using the second person" and there was a "bold line separating" the government's message and the opt-out, the court found that there was "little risk" that recipients of the form would believe that the government's statement was attributable to the children or parents claiming the exemption.  *Id.* at 619, 620.  The court also noted that Missouri's vaccination exemption form did not prevent plaintiffs from expressing their objections to immunization in another manner by submitting to the school an additional statement of religious objection, for example. Based on these findings, the Eighth Circuit panel held that Missouri's form "does not compel speech, restrict speech, or incidentally burden speech," and thus, that the plaintiffs' free speech rights were not violated.  *Id.* at 620.

Upon careful review of the challenged advisement required here, we find that it no longer requires Plaintiffs to adopt or otherwise affiliate with the State's union membership statement.  Unlike the acknowledgement required by SEA 251, which was worded in the first person and would have required teachers wishing to authorize payroll dues deduction to affirm their understanding and acceptance of a viewpoint-based statement mandated by the State with which they disagree, SEA 297's required advisement, like that upheld in *B.W.C.*, uses second-person wording and explicitly provides that "the State of Indiana wishes to make you aware …," making clear that what follows is a message directed *to* the teachers that is crafted and spoken *by* the government, not a statement voiced or endorsed by the signee of the authorization form.

Thus, "[u]nlike a student required to recite the Pledge [of Allegiance] or a motorist required to display the state's motto, there is no confusion here: it is the government's

message to [teachers] considering [the dues deduction authorization form]." *B.W.C.*, 990

F.3d at 619 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009) ("A

government entity has the right to speak for itself. It is entitled to say what it wishes, and

to select the views that it wants to express.") (cleaned up)). As in *B.W.C.*, we find "little

risk" here that recipients of the dues deduction authorization form would believe that the

teachers seeking to have their union dues deducted from their paychecks were affiliating

with or were otherwise compelled to "mouth support for" or "pledge allegiance to" the

government's advisement of their right *not* to join a union and pay dues. 990 F.3d at

619–20 (citations and quotation marks omitted). Nor are Plaintiffs prohibited or

otherwise restricted by SEA 297 from speaking about their decision to join the teachers'

union and pay dues, including their First Amendment right to do so without

discrimination. Rather, by signing the form, the only requirement imposed on Plaintiffs

is to acknowledge their having read the government's message. Such a requirement does

not rise to the level of compelled speech.

That said, we note that the dues authorization form in use by the State since the

issuance of our preliminary injunction order does not include the language challenged by

Plaintiffs in this lawsuit.[5] Nor have we been shown a draft of the form incorporating the

advisement required by SEA 297 that will be utilized if the statute is upheld by the Court.

We therefore have not been apprised of certain of the factors relied upon by the Eighth

Circuit in *B.W.C.*, including whether the State's message will be clearly separated and

---

[5] We have not been informed of any issues that have arisen in processing teachers' dues
deductions using the form that does not include the challenged language.

delineated from the portion of the form to be completed by the teachers and what size font will be used for the remainder of the form in comparison to the bold, 14-point font required for the advisement.  Accordingly, while we can foresee the possibility that certain formatting choices, including where the advisement is placed on the form, could enhance the compelled aspects of the message, on the undisputed summary judgment record before us, we hold that the challenged statutes do not violate Plaintiffs' free speech rights by compelling their speech.

## III.    Freedom of Association Claim

Plaintiffs next argue that SEA 251 and SEA 297 violate teachers' First Amendment freedom of association rights because these statutes are not limited to a simple refusal to provide a subsidy for members of a teachers' union, but instead actively erect obstacles to a subsidy that the State grants its employees and other employees in Indiana in an obvious effort to deter and discourage teachers—and only teachers—from joining and paying dues to their unions.  As such, Plaintiffs contend that in singling them out for such obstacles and burdens SEA 251 and SEA 297 actively interfere with Plaintiffs' ability to exercise their constitutional associational rights in a viewpoint discriminatory manner, in violation of the First Amendment.

The State rejoins that the challenged statutes do not violate Plaintiffs' right to expressive association because SEA 251 and SEA 297 merely condition teachers' use of a government subsidy, to wit, the State's payroll deduction machinery for union dues, on their having acknowledged receipt of the State's union advisement message.  The State contends that, because it could choose to eliminate access to the payroll-deduction

mechanism altogether without violating Plaintiffs' First Amendment rights, even if SEA 251 and SEA 297 have the effect of reducing the number of teachers authorizing the payroll deductions, burdens imposed are not unconstitutional.  Although SEA 251 and SEA 297 indisputably apply only to teachers' unions, the State nonetheless maintains that case law makes clear that allowing payroll-deduction access to some unions but not to others does not in and of itself constitute unconstitutional viewpoint discrimination, but rather reflects a permissible speaker-based distinction.

The State maintains that the legislation at issue here is indistinguishable in all relevant respects from the legislation upheld by the Seventh Circuit in *Wisconsin Education Association Council v. Walker*, 705 F.3d 640 (7th Cir. 2013), which dealt with a First Amendment free speech challenge.  In *Walker*, the challenged legislation created two distinct classes of public employees—a select group of "public safety employees" with the remainder classified as "general employees"—and, among other things, prohibited the employers of general employees from deducting union dues from paychecks altogether.  *Id.* at 642.  There, the Seventh Circuit cited a well-established principle that "use of the state's payroll systems to collect union dues is a state subsidy of speech that requires only viewpoint neutrality."  *Id.* at 645 (citing *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 358–59 (2009) (upholding legislation prohibiting payroll dues deduction applicable to unions representing all public employees).

The *Walker* plaintiffs argued that, because the legislation at issue actively imposed burdens on the speech of unions representing general employees that it did not place on unions representing public safety employees and did so for a political purpose, it was

distinguishable from the laws upheld in *Ysursa*. The Seventh Circuit rejected this argument on grounds that the *Walker* proposal "erect[ed] no barrier to speech, and speaker-based discrimination is permissible when the state subsidizes speech," 705 F.3d at 646, so long as the subsidy does not "discriminate[] on the basis of ideas." *Id.* (quoting *Leathers v. Medlock*, 499 U.S. 439, 450 (1991)).

Although *Walker* and *Ysursa* dealt with First Amendment free speech rights, not the right of association, in *South Carolina Education Association v. Campbell*, 883 F.2d 1251 (1989), a case cited favorably in *Walker*, the Fourth Circuit held that a South Carolina law allowing payroll deductions for charitable organizations, but not for labor organizations or any entity which forwarded the proceeds of payroll deductions to a labor organization, was not violative of the plaintiffs' First Amendment right of association. The plaintiffs in *Campbell* argued that the challenged statute was designed "specifically to deny the [union] payroll deduction benefits and thereby impair the effectiveness of the association." *Id.* at 1252.

The Fourth Circuit rejected this argument, holding that, "[w]hile we acknowledge that the First Amendment guarantees the right of association and the right of a professional association to express any ideas and to engage in advocacy on behalf of its members, the First Amendment does not impose an affirmative obligation on the state to assist the program of the association by providing payroll deduction services." *Id.* at 1257. While acknowledging that loss of payroll deductions "may tend to impair the effectiveness of the [union] in representing its members," such an impairment is not violative of the First Amendment because "[t]he state's failure to authorize payroll

deductions for the [union] does not deny [the union's] members the right to associate, to speak, to publish, to recruit members, or to otherwise express and disseminate their views." *Id.*

Plaintiffs argue that the case before us here is distinguishable from the holdings in *Ysura*, *Walker*, and *Campbell* in two relevant ways. First, because, by not withdrawing the subsidy altogether, but instead imposing significant additional burdens on teachers' use of that subsidy, the State has actively disadvantaged and interfered with teachers' exercise of their free association rights and/or denied them a benefit based on their having exercised their constitutional right to join a union, in violation of the First Amendment. *See Regan v. Taxation with Representation of Washington*, 461 U.S. 540, 545 (1983) ("[T]he government may not deny a benefit to a person because he exercises a constitutional right."); *Walker*, 705 F.3d at 646 (recognizing that "the state may not erect obstacles in the path of the unions' exercise of [their First Amendment rights]…"). Second, Plaintiffs argue that, by imposing these burdens only on teachers who wish to join a union and pay union dues, SEA 251 and SEA 297 discriminate based on viewpoint. We address these arguments in turn below.

We turn first to address whether SEA 251 and SEA 297 simply limit a state subsidy or instead actively burden First Amendment rights. The challenged statutes clearly impose additional administrative and practical burdens on teachers' use of the State's payroll dues deduction mechanism, making it more difficult to arrange for payroll dues deduction for their union dues by such requirements that the authorization be renewed annually using a specific form containing the union advisement language and

through the multi-step process where a payroll deduction request authorization be submitted by the teacher and confirmed by the school and then reconfirmed by the teacher via email communication.  We acknowledge that, while payroll dues deduction can enhance teachers' exercise of their right to expressive association, Supreme Court precedent makes clear that the State "is under no obligation to aid [teachers' unions] in [their expressive] activities," *Ysursa*, 555 U.S. at 359, and "use of the state's payroll systems to collect union dues is a state subsidy of speech that requires only viewpoint neutrality." *Walker*, 705 F.3d at 645 (citing *Ysursa*, 555 U.S. at 358–59).  The challenged statutes here do not restrict teachers' rights to choose to join a union or to associate with that union, or otherwise prohibit teachers from paying their dues and/or prohibit or restrict teachers' unions from collecting and freely spending that money.  SEA 251 and SEA 297 are best and most fairly described as measures that "trim[] a state subsidy rather than infringe[] a First Amendment right." *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 898 (9th Cir. 2018).

This conclusion does not end our inquiry, however.  Plaintiffs contend that, even if interpreted as a limit on a subsidy, SEA 251 and SEA 297 are subject to strict scrutiny because they  discriminate on the basis of viewpoint and are thus distinguishable from the statute upheld by the Seventh Circuit in *Walker*.  Unlike the intra-union distinction between public safety employee unions and general employee unions at issue in *Walker*, which the Seventh Circuit held was "neither facially discriminatory nor a neutral façade for viewpoint discrimination," (705 F.3d at 648), SEA 251's and SEA 297's requirements apply solely to union-supporting teachers.  No other individual or occupation in Indiana

faces the additional burdensome, bureaucratic obstacles to use of the State's payroll deduction procedures faced by teachers seeking to belong to their union. None of the other seventeen types of wage assignments permitted in Indiana's Wage Assignment statute that is subject to SEA 251 and SEA 297 are subject to such requirements to secure the benefits of those statutory procedures. This, Plaintiffs argue, is not a "facially neutral" statute; rather it is clearly a case of viewpoint discrimination, making it subject to strict scrutiny.

The State rejoins that, while SEA 251 and SEA 297 make distinctions based on speaker, such speaker-based discrimination is permissible in the context of government subsidies. The fact that their requirements apply only to teachers seeking to use wage assignment to pay their union dues by payroll deduction does not render the statute impermissibly viewpoint-based because neither of the challenged statutes ties the teachers' authorization of payroll deductions to speech on any particular viewpoint. SEA 251 and SEA 297 do not, for example, provide that unions and teachers advocating for a particular position on wages, pensions, benefits, or other political issue are subject to their requirements, while unions and teachers advocating for the opposite position may not. Thus, the State argues, the challenged statutes are viewpoint neutral and not violative of the First Amendment.

The Seventh Circuit recently reiterated that "speaker-based discrimination is permissible when the state subsidizes speech." *Int'l Union of Operating Engineers, Local 139, AFL-CIO v. Daley*, 983 F.3d 287, 299 (7th Cir. 2020) (quoting *Walker*, 705 F.3d at 646). "In other words, a government subsidy that discriminates among speakers does not

implicate the First Amendment unless it discriminates on the basis of ideas." *Id.* (quotation marks and citation omitted).  Courts recognize, however, that in some cases "the speaker/viewpoint distinction may as a practical matter be illusory: 'Speech restrictions based on the identity of the speaker are all too often simply a means to control content.'" *Oklahoma Corr. Pro. Ass'n Inc. v. Doerflinger*, 521 Fed. App'x 674, 679 (10th Cir. 2013) (quoting *Citizens United v. Fed. Elec. Comm'n*, 558 U.S. 310, 340 (2010)).

Here, SEA 251 and SEA 297 single out a specific group—union-supporting teachers—to subject to additional procedural requirements in order to take advantage of payroll deductions for union dues, but for no other state employees seeking wage assignments.  Unlike the public safety/general employee distinction at issue in *Walker*, which classification the Seventh Circuit held had "no inherent connection to a particular viewpoint" because "a particular union's political views do not inhere in its status as a public safety union," (705 F.3d at 649), the classification here, which singles out pro-union teachers as well as their unions, *does* have an inherent connection to a particular viewpoint—one that has often been in direct conflict with the State's interests and views on various political issues impacting public education.  The connection between SEA 251's and SEA 297's classification and the viewpoint discriminatory effect on pro-union teachers is therefore *not* "merely coincidental" as it was in *Walker*.  *Id.*  Rather, here, the State in singling out one specific group whose identity and viewpoints are sufficiently intertwined to be synonymous, and to require that group and only that group to jump through additional hoops and move through complex bureaucratic "mother may I"-type steps in order to access the payroll dues deduction process for union dues seems to have

done so based on this group's specific purposes and views.  Accordingly, we hold that SEA 251 and SEA 297 do, indeed, discriminate on the basis of viewpoint.[6]

As such, SEA 251 and SEA 297 are subject to strict scrutiny and must be shown to be narrowly tailored to further a compelling state interest.  The State contends that SEA 251 and SEA 297 were enacted in response to and designed to effectuate the Supreme Court's decision in *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018).  In *Janus*, "the Supreme Court held that the practice of automatically deducting fair-share fees from *nonmembers* who 'need not be asked' and 'are not required to consent before the fees are deducted' violated those nonmembers' First Amendment rights by compelling them to subsidize the union's speech."  *Bennett v. Council 31 of the Am. Fed. of State, County, and Municipal Employees AFL-CIO*, 991 F.3d 724, 731–32 (7th Cir. 2021) (emphasis added).  The State argues that *Janus*'s requirement of "clear and compelling" evidence of an employee's waiver of their First Amendment right not to financially support a union "covers everyone—members or not," (Dkt. 66 at 4), and thus, that SEA 251 and SEA 297 are necessary to ensure that "individuals are aware of their rights before they opt-in to union membership and execute a wage assignment."  Dkt. 58 at 23.

---

[6] Plaintiffs' contention that, even if considered a limitation on a speech subsidy, SEA 251 and SEA 297 are violative of Plaintiffs' associational rights because they are viewpoint discriminatory was not the focus of Plaintiffs' arguments at the preliminary injunction stage. Accordingly, we did not consider this issue in finding that Plaintiffs had failed to demonstrate a likelihood of success on the merits of their First Amendment free association claim.

Initially, we note that the Seventh Circuit has rejected that interpretation of *Janus*, holding that "[n]othing in *Janus* suggests that its holding regarding union-related deductions from nonmembers' wages also applies to similar financial burdens on union members." *Bennett*, 991 F.3d at 731–32; *see also Belgau v. Inslee*, 975 F.3d 940 (9th Cir. 2020 (holding that *Janus* "in no way created a new First Amendment waiver requirement for union members before dues are deducted pursuant to a voluntary agreement"). However, even if such a waiver for members and nonmembers alike were required by *Janus*, the Supreme Court's holding in *Janus* was not limited only to teachers and their unions; rather, its holding applies uniformly to *all* public sector employees. Yet SEA 251 and SEA 297 have been written to apply *solely* to teachers choosing to pay their union dues through payroll deduction, not to any other category of public employee(s) in Indiana.

The State does not provide and explanation for teachers being more in need of an advisement of their First Amendment rights with respect to payroll deductions for union dues compared to other public sector employees. The State merely states that such a distinction is rational "in view of the role teachers play in fulfilling the goal of providing Hoosier schoolchildren with an education, a legitimate government interest with state constitutional import…." Dkt. 58 at 24. This explanation falls far short of a convincing rationale for limiting (burdening) the wage assignment process only for teachers. Nonetheless, having found the challenged statutes to be viewpoint discriminatory, the standard here is not whether the distinction is rational, but whether it is narrowly tailored to further the State's interest. Given the serious underinclusivity of SEA 251 and SEA

297, the State has failed to show that the challenged statutes are narrowly tailored to further its interest either in furthering educational goals to benefit students in our public schools or in complying with *Janus*, including ensuring "individuals are aware of their rights before they opt-in to union membership and execute a wage assignment." Dkt. 58 at 23. Accordingly, we hold that the challenged statutes cannot withstand constitutional scrutiny.

## IV.   Permanent Injunction

In their motion for summary judgment, Plaintiffs seek a permanent injunction prohibiting enforcement of SEA 251 and SEA 297. "[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) (citation and quotation marks omitted). Specifically, a plaintiff must show that (1) it has suffered an irreparable injury, (2) that remedies at law are inadequate to compensate for that injury, (3) that the balance of hardships tips in favor of the plaintiff, and (4) that the public interest would not be harmed by the permanent injunction. *Id.*

We previously granted Plaintiffs a preliminary injunction against enforcement of section (c)(3) of SEA 251, based in part on Plaintiffs having established these four factors. Although our preliminary injunction was issued on the basis of Plaintiffs' First Amendment free speech claim, the same analysis of these factors applies here to Plaintiffs' First Amendment free association claim. Accordingly, having demonstrated that no material fact exists as to the unconstitutionality of SEA 251 and SEA 297, Plaintiffs are entitled to an order permanently enjoining enforcement of these statutes.

The injunction shall issue by separate order, in accordance with Seventh Circuit requirements.

## V.   Conclusion

For the reasons detailed above:

- Plaintiff's Motion for Oral Argument [Dkt. 46] is <u>DENIED</u>.

- Plaintiffs' Motion for Summary Judgment and Permanent Injunction [Dkt. 45] is <u>DENIED IN PART</u> as to their First Amendment free speech claim and <u>GRANTED IN PART</u> as to their First Amendment freedom of association claim.

- Defendant's Cross Motion for Summary Judgment [Dkt. 57] is correspondingly <u>GRANTED IN PART</u> as to Plaintiff's First Amendment free speech claim and <u>DENIED IN PART</u> as to Plaintiff's First Amendment freedom of association claim.

- Defendant is <u>HEREBY PERMANENTLY ENJOINED</u> from enforcing SEA 251 and SEA 297.  The specific language of the injunction is set forth in a separate order as required by the Seventh Circuit.

Final judgment shall issue accordingly.

IT IS SO ORDERED.

Date:   _____3/30/2023_____     *Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Courtney Lyn Abshire
Parr Richey Frandsen Patterson Kruse LLP
cabshire@parrlaw.com

Jeffrey A. Macey
Macey Swanson LLP
jmacey@maceylaw.com

Barry A. Macey
MACEY SWANSON AND ALLMAN
bmacey@maceylaw.com

Meredith McCutcheon
INDIANA ATTORNEY GENERAL
meredith.mccutcheon@atg.in.gov